IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STEPHANIA ROBINSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 5:23-CV-142-H-BV |
| | § | |
| UNITED STATES, | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephania Robinson received medical care from Dr. Karen Aguilar, a physician employed by the Department of Veterans Affairs (VA). Robinson now sues the United States under the Federal Tort Claims Act (FTCA) for Dr. Aguilar's alleged medical negligence, contending that Dr. Aguilar prescribed treatments and medications that caused Robinson to develop vitiligo—a loss of pigment to the skin—and become generally unwell.

The United States moves for summary judgment on Robinson's medical negligence claims, asserting that because she has no expert testimony, she cannot establish the requisite elements. In response, Robinson invokes Rule 56(d) of the Federal Rules of Civil Procedure and argues that she needs additional discovery before the Court rules on the motion. As explained fully herein, the undersigned recommends that the United States District Judge deny Robinson's Rule 56(d) motion and grant the United States's motion for summary judgment.

**1.      Robinson has not designated an expert witness, nor has she supplied the expert disclosures required under the federal rules.**

Proceeding pro se, Robinson sues the United States under the FTCA based on medical care she received from Dr. Aguilar, a physician at the VA. Dkt. No. 1. According to Robinson, Dr. Aguilar was her primary care physician for about thirteen years. *Id.* at 3.[1] Robinson began having difficulty walking, and after ordering X-rays, Dr. Aguilar diagnosed Robinson with osteoarthritis in her knees. *Id.* at 4. Dr. Aguilar recommended steroid injections to alleviate the pain. *Id.* But Dr. Aguilar did not advise Robinson that the injections might cause loss of skin pigmentation or hair. *Id.*

The injections helped Robinson walk, but after the first round of injections, she noticed "a change in [her] skin." *Id.* at 5; *see* Dkt. No. 10 at 2 (stating that around March 19, 2019, she noticed the first sign of vitiligo). When Robinson went to an appointment for the second round of injections, a nurse stated that Robinson's skin might be losing color in reaction to the injections. Dkt. No. 1 at 5. Nevertheless, Robinson agreed to a second set of injections because they were alleviating her pain. *Id.* After, Robinson's skin color faded more and her hair started falling out. *Id.*; *but see* Dkt. No. 10 at 2 (alleging that her hair started shedding before her pigment changed). Dr. Aguilar referred Robinson to a dermatologist, who diagnosed her with "medical vitiligo"—a loss of pigmentation due to medication. Dkt. No. 1 at 5. Robinson assumed the injections were causing the vitiligo, so she stopped taking them. *Id.*

---

[1] Page citations to Robinson's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Around the same time, however, Robinson also felt unwell. *Id.* at 5. After an ultrasound revealed she had swelling in every organ, she discontinued all other medications prescribed by Dr. Aguilar because she believed they were causing her health to deteriorate. *Id.* at 5–6. She began "taking sea-moss, vitamins, and cinnamon pills" to "nurse [her]self back to health," but when those didn't help, she returned to the VA. *Id.* at 6. Dr. Aguilar had retired, so the VA assigned Robinson a new physician, Dr. Phuong. *Id.* at 3, 6. Since being treated by Dr. Phuong, Robinson's health has greatly improved, and the pigment has begun returning to her skin. *Id.* at 3–4.

Robinson sues the United States for Dr. Aguilar's alleged medical negligence. *See id.* at 1–2. The deadline to designate expert witnesses and serve the disclosures required under the federal rules expired August 1, 2025. Dkt. No. 44 at 3. Robinson did not designate an expert witness.

The United States moves for summary judgment on the basis that Robinson has no expert testimony to establish the requisite elements of her medical negligence claims. Dkt. Nos. 75, 76. The United States also asks that "all costs of this action [be] taxed against Robinson." Dkt. No. 76 at 2.

In response, Robinson filed what the undersigned construes as a motion to defer resolution of the United States's motion and for additional discovery under Fed. R. Civ. P. 56(d). Dkt. No. 77. Robinson acknowledges that she "currently lack[s] evidence regarding [her] diagnosis" but is in the process of obtaining a physician outside the VA to conduct testing. *Id.* at 1–2 (cleaned up). Robinson explains "[t]he number one reason these results are needed is to further disprove the diagnosis of vitiligo and subsequently

3

prove that [she] . . . has 'hypopigmentation' which is a 'side effect' from the medication that was injected into [her] . . . knees . . . ." *Id.* at 3 (cleaned up).

The United States opposes Robinson's request for deferral and for additional discovery. Dkt. No. 79. It contends that Robinson has not shown that she diligently pursued discovery, and in any event, the proposed new discovery will not defeat its motion for summary judgment. *Id.* at 5–8.

**2.    Robinson must establish there is a genuine dispute of material fact to survive summary judgment.**

Where the pleadings and evidence show that no genuine issue of material fact exists, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (explaining that the movant initially "bears the burden of demonstrating that there is no genuine dispute of material fact"). When the non-movant bears the burden of proving such material facts at trial, movants may satisfy their burden by either affirmatively showing the non-movant's inability to establish such material facts or "merely demonstrat[ing] an absence of evidentiary support in the record for the non-movant's

4

case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)); *accord Owens*, 33 F.4th at 824.

If the movant meets that burden, the non-movant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "To satisfy this burden," the non-movant is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] [her] claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted).

Courts must view all facts and inferences in the light most favorable to the non-movant and resolve any disputed material facts in the non-movant's favor. *Anderson*, 477 U.S. at 255; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). But "a [non-movant] cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). And "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992).

Under Rule 56(d), the court may defer ruling on a motion for summary judgment or allow the non-movant time to take additional discovery *if* the non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Am. Fam. Life Ins. Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (internal quotation marks and citation omitted). But "non-moving parties requesting Rule 56(d) relief may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* (internal quotation marks and citation omitted).

To obtain relief under Rule 56(d), the non-movant must show "(1) why [she] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (citation omitted). The non-movant "must also have diligently pursued discovery." *Id.* (citation omitted).

**3.     The district judge should deny Robinson's Rule 56(d) motion and grant the United States's motion for summary judgment.**

**A. Rule 56(d) motion**

Robinson's Rule 56(d) motion asks "the Court to grant a 60-day extension that will allow for . . . extensive testing [to] be permitted and results to be obtained" so she can meet her burden of proof. Dkt. No. 77 at 4. In Robinson's view, the test results will

show that she does not have vitiligo but instead "has hypopigmentation, which is a side effect from the" steroid injections. *Id.* at 3 (internal quotation marks omitted) (cleaned up). Robinson's motion should be denied for several reasons.

First, Robinson's purported unsworn declaration is not in the proper form. *See* Fed. R. Civ. P. 56(d) (providing that courts may grant relief "[i]f a movant shows *by affidavit or declaration* that, for specified reasons, it cannot present facts essential to justify its [summary judgment] opposition" (emphasis added)). She avers that she is making the statements "under penalty of perjury," but she did not affirm that the statements made in the filing are "true and correct," nor did she include a "wet" signature and date. *See* Dkt. No. 77 at 1, 4; 28 U.S.C. § 1746(1) (setting forth language that should be contained in an unsworn declaration); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–06 (5th Cir. 1988) (holding that defendant's purported affidavit was not competent summary judgment evidence because it was "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury"); *Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515 (6th Cir. 2022) (holding that plaintiff's "affidavit was not a proper declaration under 28 U.S.C. § 1746 because it was unsworn and filed with [his] electronic signature rather than his personal signature"). *But see Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 n.4 (5th Cir. 2021) (acknowledging that the Fifth Circuit has never determined "whether a 'declaration' passes muster if, as here, it was made 'under penalty of perjury' but does not represent that its contents are 'true and correct,' thereby failing to comply with the full text of § 1746"). Robinson's failure to submit a proper unsworn declaration necessitates denial of the motion. Fed. R. Civ. P. 56(d); *Leza v. City of*

7

*Laredo*, 496 F. App'x 375, 377–78 (5th Cir. 2012) (per curiam) (affirming district court's denial of plaintiff's Rule 56(d) motion as "procedurally defective," where plaintiff did not supply an affidavit or declaration, which "is what Rule 56 requires"); *Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004) ("[T]he failure to file an affidavit under Rule 56(d) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." (cleaned up) (citation omitted)); *Gettings v. Bldg. Laborers Loc. 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) (explaining that a party *must* file an affidavit under Rule 56(d) that explains "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information" (citation omitted)).

Setting aside the form of her filing, Robinson has not met her burden to obtain relief under Rule 56(d). First, she has not shown that she diligently pursued discovery. Her deadline to designate an expert expired August 1, and the discovery deadline expired December 5, 2025. Dkt. No. 44 at 3–4. Robinson moved to extend those deadlines in June 2025, but she did not address any of the required good-cause factors, so the Court denied her motion without prejudice. Dkt. Nos. 47, 48. She did not renew her motion until after the deadlines expired. Dkt. No. 68 (filed Dec. 15, 2025). The Court denied her second motion because she again failed to establish good cause. Dkt. No. 81. Specifically, the Court observed that "Robinson ha[d] not explained the actions she took to meet the scheduling order deadlines and why she could not meet them despite her actions." *Id.* at 7.

For the third time, Robinson advances no explanation for her failure to timely pursue the proposed discovery, nor does she otherwise provide grounds for modifying the scheduling order. She explains that in July 2025, she tried to obtain an appointment with a VA dermatologist to conduct her desired testing. Dkt. No. 77 at 2. But due to a backlog of appointments at the VA caused by the government shutdown, she was unable to see a VA dermatologist in time so she obtained an appointment with a dermatologist outside the VA. *Id.* at 2–3. Robinson's account describes why she has not yet obtained testing results, but it does not explain why she waited until July 2025 (just a few weeks before the expert deadline expired) to start the process, nor does she address why she failed to seek an extension once she knew she could not obtain the information in time.

Robinson attempts to shift blame for the delay in discovery to the VA and/or the United States. *Id.* at 3 (blaming the VA for the lack of testing and allegedly incorrect diagnosis of vitiligo); *id.* (arguing that the United States "has not yet produced the relevant documents or answers to . . . interrogatories"). However, regarding the additional testing, Robinson is responsible for waiting until July 2025 to initiate the process. *See id.* at 2. And regarding discovery, the Court has already concluded that Robinson failed to identify any outstanding documents or information. Dkt. No. 80 (denying Robinson's motion to compel). Ultimately, the discovery Robinson wants is "not dependent on the defendant but rather facts and reports completely within [her] control." *St. Bernard Par. v. Lafarge N. Am., Inc.*, 550 F. App'x 184, 188 (5th Cir. 2013) (per curiam).

9

Robinson has failed to demonstrate diligence. This failure necessitates denial of her motion. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (explaining that "[i]f [a movant] has not diligently pursued discovery, however, she is not entitled to relief under Rule 56(d)."); *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (affirming district court's denial of Rule 56(d) motion where relevant discovery was within plaintiff's control and case had been pending for two years before defendant moved for summary judgment); *see also Woolery v. Doty*, No. 3:21-CV-1728-D, 2023 WL 2589393, at *3 (N.D. Tex. Mar. 20, 2023) (denying plaintiff's Rule 56(d) motion because he did not submit an affidavit or declaration, the discovery and expert deadlines had expired, and defendant's summary judgment motion was not filed until one month after the discovery deadline expired, meaning the motion was not premature). What is more, Robinson has not established how the additional discovery "will defeat [Defendant's] summary judgment motion." *Smith v. BP Expl. & Prod., Inc.*, No. 23-30619, 2024 WL 3842571, at *3 (5th Cir. Aug. 16, 2024) (per curiam) (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991)). Robinson believes that the testing will prove that the loss of pigmentation was not due to vitiligo—an autoimmune condition—but was instead the result of "hypopigmentation, which is a side effect from the" knee injections. Dkt. No. 77 at 3 (internal quotation marks omitted) (cleaned up). However, as discussed below, the reason for the loss of pigmentation does not answer two critical issues raised in the United States's summary judgment motion: (1) what was the standard of care?; and (2) did the Dr. Aguilar breach that standard? Robinson needs expert testimony to answer these questions, but she failed to timely

designate an expert. *See infra* Section 3.B. Thus, Robinson's proposed discovery "will [not] influence the outcome of the pending summary judgment motion." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016) (citation omitted).

In sum, Robinson has not shown that she diligently pursued additional testing, nor has she established that the proposed discovery will defeat the United States's summary judgment motion. Thus, the undersigned recommends that the district judge deny Robinson's Rule 56(d) motion.

## B. Summary judgment motion

"The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). "State law controls liability for medical malpractice under the FTCA." *Id.*

To establish a medical negligence/malpractice claim under Texas law, a plaintiff must show the following: "(1) the physician's duty to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) causation." *Id.* "The plaintiff must establish the standard of care as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence." *Id.*

"'Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required'" to establish the

11

standard of care and whether it was breached. *Id.* at 601–02 (quoting *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1997)); *accord Quijano v. United States*, 325 F.3d 564, 568 (5th Cir. 2003) ("Expert testimony is generally required to prove the applicable standard of care."). A plaintiff also needs expert testimony "to establish causation as to medical conditions outside the common knowledge and experience of [the finder of fact]." *Ellis v. United States*, 673 F.3d 367, 373 (5th Cir. 2012) (alteration in original) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007)). Examples of matters within a layperson's common knowledge "include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body." *Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990).

Here, Robinson alleges that Dr. Aguilar was medically negligent by prescribing steroid injections for her knees without cautioning her that they might cause a loss of pigmentation or hair. Dkt. No. 1 at 4–5 (alleging that "[b]efore I started receiving these steroid shots, no one told me that I could have such a severe reaction from [the shots], that it would take my melanin away.). Robinson also generally complains about Dr. Aguilar's treatment of her conditions—including mental health issues, diabetes, and pain. *Id.* at 1, 3–6. The standard of care for these conditions, particularly when treated in combination, is not within the common knowledge or general experience of a layperson. *See Woods v. U.S. Gov't*, No. 10-10599, 2011 WL 857007, at *1–2 (5th Cir. Mar. 11, 2011) (per curiam) (holding that plaintiff needed expert testimony to establish standard of care for prescription of cholesterol medication "to patients with multiple underlying conditions" and that alleged mis-prescribing of medication was "not similar to operating

12

on the wrong portion of body" (internal quotation marks and citation omitted)); *Bradfield v. U.S. ex rel. Dep't of Veteran's Affairs*, 471 F. App'x 364, 366 (5th Cir. 2012) (per curiam) ("Although [plaintiff] asserts that the medication he has been prescribed is causing negative side-effects that could be avoided with different medications, he has not produced any expert testimony to establish the relevant standard of care or that such standard of care was breached"; thus, summary judgment was appropriate.).

Without expert testimony, Robinson cannot show that there is a genuine issue of material fact as to whether the United States breached the standard of care. *See Jenkins v. United States*, 857 F. App'x 820, 821 (5th Cir. 2021) (per curiam) (rejecting plaintiff's argument that expert testimony was not necessary because medical malpractice "claims concerning surgical care and decisions about medication, like those [plaintiff] raised, must be supported by expert testimony"). Nor can she establish causation. *See Guile v. United States*, 422 F.3d 221, 227–28 (5th Cir. 2005) (explaining that "[e]vidence of proximate cause must show that in the absence of the alleged breach the harm would not have occurred, and must state, describe or explain the connection between the breach and the harm in sufficient detail to support the expert's assertion of proximate cause"); *Kalteyer v. Sneed*, 837 S.W.2d 848, 853–54 (Tex. App.—Austin 1992, no writ) (holding there was no fact issue as to proximate cause element because plaintiff did not present expert testimony connecting medical treatment to symptoms).

The United States has met its summary judgment burden by pointing out the need for—and the lack of—expert testimony to support Robinson's medical negligence claims. *Woods v. U.S. Gov't*, No. 3:08-CV-1670-D, 2010 WL 809601, at *3 (N.D. Tex. Mar. 8,

13

2010), *aff'd*, 2011 WL 857007 (5th Cir. Mar. 11, 2011). "Even where a plaintiff is proceeding *pro se*, if, like here, expert testimony is necessary to establish the standard of care, a plaintiff's failure to properly designate or obtain 'an expert to testify on h[er] behalf' is a proper basis to grant summary judgment . . . ." *Sereseroz v. United States*, No. 3:14-cv-2723-M-BN, 2017 WL 1157224, at *3 (N.D. Tex. Mar. 2, 2017) (quoting *Hannah*, 523 F.3d at 602), *R. & R. adopted by* 2017 WL 1155836 (N.D. Tex. Mar. 27, 2017). Because Robinson failed to timely designate an expert or produce anticipated expert testimony on the essential elements of her medical negligence claims, the district judge should grant the United States's motion for summary judgment. *See, e.g., Borden v. United States*, 537 F. App'x 570, 575 (5th Cir. 2013) (per curiam) ("[B]ecause [plaintiff] failed to designate a medical expert to establish the threshold standard-of-care issue, the court properly granted summary judgment for the Government on her medical-malpractice claim."); *Dean v. United States*, No. 4:19-cv-00340-O, 2020 WL 5094688, at *4–5 (N.D. Tex. Aug. 28, 2020) (granting summary judgment in favor of defendant on plaintiff's FTCA claim because plaintiff did not designate an expert or produce expert testimony, and his medical conditions were not "matters of common knowledge or within the general experience of a lay person, so as to excuse the requirement to provide evidence in the form of expert").

### C. Costs under Rule 54(d)

"Unless a federal statute, the[ federal] rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *see* 28 U.S.C. § 1920 (listing the types of costs a party may recover).

14

"Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). But a court has discretion to deny an award of costs when a "suit was brought in good faith *and* denial is based on at least one of the following factors:"

> (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.

*Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018). The prevailing party bears the burden of proving the amount and necessity of the costs incurred and must show that they are recoverable. *See Fogelman v. ARAMCO*, 920 F.2d 278, 285–85 (5th Cir. 1991).

If the district judge adopts this recommendation and grants the United States's motion for summary judgment, it will be the prevailing party. The district judge should direct the United States to file a bill of costs in accordance with Local Civil Rule 54.1 for consideration by the Court. *See* N.D. Tex. Loc. Civ. R. 54.1.

## 4. The undersigned recommends dismissal.

The undersigned recommends that the United States District Judge (1) **DENY** Robinson's Rule 56(d) motion, Dkt. No. 77; (2) **GRANT** the United States's motion for summary judgment, Dkt. No. 75; (3) **DIRECT** the United States to file a bill of costs in accordance with Local Civil Rule 54.1; and (4) **DISMISS** Robinson's complaint and all claims therein with prejudice.

5.     **The parties have a right to object.**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 13, 2026.

_____
AMANDA 'AMY' R. BURCH
UNITED STATES MAGISTRATE JUDGE

16